IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| TIFFINY WATSON, as Mother and Next Friend of A.W., a Minor, <br><br> Plaintiff, <br><br> v. <br><br> The CITY OF CHICAGO, Illinois, a municipal corporation, JONATHAN SMITH (#15292), PIERRE WILLIAMS (#7632), TINA DUDLEY (#21323), DONNA ALBERT (#20010), LISA BUCKHALTER (#20073), WILLIAM DOOLIN (#1837), ERIC CURIEL (#9650), CHRISTOPHER WALSH (#19439), and UNKNOWN CHICAGO POLICE DETECTIVE. <br><br> Defendants. | Case No. <br><br> JUDGE <br><br> Magistrate <br><br> Jury Trial Demanded |

## COMPLAINT

NOW COMES Plaintiff TIFFINY WATSON, as Mother and Next Friend of A.W., a Minor, by and through her attorney, JULIAN JOHNSON, THE LAW OFFICE OF JULIAN JOHNSON, LLC, for Plaintiff's Complaint and Jury Demand against Defendant Chicago Police Officers JONATHAN SMITH, PIERRE WILLIAMS, WILLIAM DOOLIN, ERIC CURIEL, CHRISTOPHER WALSH, Chicago Police Detectives TINA DUDLEY, DONNA ALBERT, LISA BUCKHALTER, UNKNOWN CHICAGO POLICE DETECTIVE and the CITY OF CHICAGO, Illinois, a municipal corporation, states as follows:

## NATURE OF ACTION

1. This action is brought pursuant to the laws of the United States Constitution, through 42 U.S.C. §1983 and 42 U.S.C. §1988, to redress deprivations of the Civil Rights of A.W., a minor, by the Defendants.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §1331, §1343, & §1367.

3. At all relevant times, Plaintiff and A.W., were residents of the State of Illinois in this Judicial District. At all relevant times, Plaintiff was the mother of A.W., a minor who was born in 2004.

4. The CITY OF CHICAGO is a municipal corporation located in the State of Illinois in this Judicial District. At all relevant times, the CITY OF CHICAGO was the employer of Defendants SMITH, WILLIAMS, DUDLEY, ALBERT, BUCKHALTER, DOOLIN, CURIEL, WALSH, and UNKNOWN CHICAGO POLICE DETECTIVE.

5. All events giving rise to the claims asserted herein occurred within this Judicial District.

**FACTS**

6. On January 2, 2020, A.W. and three other juveniles left the home of one of the juveniles and went to a neighborhood convenience store located at 79th and Paulina Street in Chicago.

7. While A.W. and the three other juveniles were inside of the convenience store, Joseph Sullivan, a delivery driver for Barraco's Pizza, was delivering food to 7800 S. Marshfield.

8. Joseph Sullivan initially went to 7800 S. Paulina, the wrong address, and called the number on the receipt to let the customer know that he was there.

9. When Joseph Sullivan called the number, a juvenile female answered the phone and said that she would be coming down.

10. Joseph Sullivan realized he was at the wrong address and went to 7800 S. Marshfield and called again. The juvenile female said she would come down.

11. Joseph Sullivan walked into the building and was attacked by three males, one of which displayed a gun.

12. Joseph Sullivan was able to make noise and fight off the attackers.

13. While Joseph Sullivan was being attacked, A.W. and the three juveniles he was with were inside of the convenience store.

14. A call was made to 911 after the attempted robbery stating that the three offenders were running towards 7800 S. Ashland. The OEMC dispatcher stated that two were wearing red coats, and one was wearing a grey coat.

15. A.W. and the three juveniles he was with exited the convenience store at 79th and Paulina.

16. 79th and Paulina is in the opposite direction of 78th and Ashland.

17. Defendants WILLIAMS and SMITH stopped A.W. and the three juveniles he was with as they exited the store.

18. None of the boys matched the description given for the offenders who attacked Joseph Sullivan.

19. None of the boys had a weapon on them nor any proceeds from the attempted robbery of Joseph Sullivan.

20. At the time he was stopped, A.W. had a can of soda in his hand.

21. Additional officers, including Defendant DOOLIN, responded to the scene of A.W.'s stop.

22. Defendants WILLIAMS and SMITH immediately put A.W. in handcuffs.

23. Defendants CURIEL and WALSH responded to the scene of the attempted robbery and spoke to Joseph Sullivan and another witness.

24. Joseph Sullivan told Defendants CURIEL and WALSH that he did not get a good look at the offenders, but he did see that the one that pulled the gun on him was heavyset with curly hair.

25. Joseph Sullivan also told Defendants WALSH and CURIEL that he spoke to the female and called the number on the receipt prior to being attacked.

26. Defendant WALSH took possession of the receipt.

27. While with Joseph Sullivan at 7800 S. Marshfield, Defendants WALSH and CURIEL received a call over their police radio to bring Joseph Sullivan to 79th and Paulina for a showup.

28. Defendants CURIEL and WALSH transported Joseph Sullivan to the location of A.W. for the showup.

29. As Defendants CURIEL and WALSH drove to the showup, Defendants CURIEL and WALSH told Joseph Sullivan that he did the right thing and that he was ending ring of robberies.

30. Defendant WALSH told Joseph Sullivan that "these guys have been bothering a lot of delivery drivers."

31. Around the same time, the OEMC dispatcher went over the police radio and said that a call had come in stating that the offenders were four Black males, one Black female with a dark complexion.

32. This OEMC police radio message was heard by Defendants CURIEL, SMITH, WILLIAMS, WALSH, and DOOLIN.

33. The dispatcher went over the police radio several times during the incident and stated that a call came in stating that there was a female who was involved in the robbery of Joseph Sullivan who lived at 7800 S. Marshfield and that the three male offenders may be inside with her.

34. The OEMC dispatcher later went over the police radio again and reported that a domestic disturbance call came in at 7801 S. Marshfield and that the caller was a female named K.C.

35. The OEMC dispatcher stated that this individual might be the same female involved in the robbery.

36. These OEMC police radio messages were heard by Defendants SMITH, WALSH, WILLIAMS, DOOLIN, and CURIEL who all disregarded the information and instead focused on A.W. and the other juveniles.

4

37. Defendants SMITH and WILLIAMS placed A.W. in what amounted to an illegal lineup and conspired with Defendants WALSH, CURIEL, and DOOLIN to frame A.W. for the attempted robbery to make a quick arrest. Each of the above-mentioned defendants took overt acts in furtherance of this conspiracy to deprive A.W. of his Constitutional rights.

38. As Joseph Sullivan sat in the back of Defendants CURIEL and WALSH'S vehicle, he falsely identified A.W. as one of the persons who attached him even though A.W. did not match the description.

39. Joseph Sullivan stated that A.W. was one of the offenders because Defendants CURIEL and WALSH improperly told him that A.W. was one of the offenders who had been involved in a ring of robberies.

40. Joseph Sullivan specially identified A.W. as the offender with the gun.

41. Defendant DOOLIN came to the vehicle and spoke to Joseph Sullivan.

42. Joseph Sullivan told Defendant DOOLIN that he was not comfortable enough in his identification to testify in court to it.

43. Defendant DOOLIN disregarded this and went along with the conspiracy to falsely arrest A.W.

44. Defendant SMITH ordered that A.W. be arrested.

45. A.W. pleaded with Defendants SMITH and WILLIAMS to go to the store and talk to the people inside to confirm that they were inside at the time of the robbery.

46. Defendants WILLIAMS and SMITH disregarded this request.

47. When another officer told Defendant SMITH that she was going to talk to persons inside the store, Defendant SMITH stopped the officer from doing so.

48. Defendant Smith stopped the officer from talking to the persons inside the store because he knew A.W.'s alibi would be corroborated.

49. Defendants WALSH, CURIEL, SMITH, and WILLIAMS relocated back 7800 S. Marshfield with Joseph Sullivan.

50. Defendant SMITH asked Joseph Sullivan to recount the events of the attempted robbery for Defendant SMITH.

51. Joseph Sullivan recounted to Defendant SMITH what occurred and told Defendant SMITH that he was not comfortable enough in his identification to testify to it in court.

52. Defendant SMITH disregarded this.

53. Joseph Sullivan also told Defendant SMITH that there was a USPS mail carrier who saw the entire incident and the mail carrier got a better look at the offenders than he did.

54. Defendant SMITH told Joseph Sullivan that he was not going to include the information about the mail carrier in his report.

55. Defendant SMITH took no steps to locate and speak to the mail carrier who witnessed the attempted robbery.

56. As Defendant SMITH was speaking to Joseph Sullivan, Defendants SMITH, WALSH, WILLIAMS, and CURIEL were located directly across the street from 7801 S. Marshfield, where the OEMC dispatcher said that the female and male offenders who were reported to have committed the robbery were located.

57. Defendants SMITH, CURIEL, WILLIAMS, and WALSH took no steps to go to the address and speak to the female and male offenders who the dispatcher stated were involved in the robbery.

58. A.W. was arrested and taken to the police station.

59. Defendant Detective DUDLEY spoke to Plaintiff and A.W. and told them that she was investigating a series of robberies and that she was going to show A.W.'s picture to the other victims and come back and arrest him later for the other robberies.

6

60. Later in the day on January 2, 2020, Joseph Sullivan came to the police station for a photo array.

61. The photo array did not include A.C. nor the three other juveniles A.C. was with in the convenience store.

62. Joseph Sullivan identified two individuals on the single photo array as the persons involved in the attempted robbery and specially identified one of them as having the gun.

63. None of the individuals on the photo array were involved in the robbery.

64. Despite the faulty photo array identification, Defendants DUDLEY, WILLIAMS, and SMITH proceeded forward with the false arrest and prosecution of A.W. for the attempted robbery of Joseph Sullivan.

65. Upon information and belief, at some point after January 2, 2020, Defendant Detectives DUDLEY, BUCKHALTER and ALBERT showed the photograph of A.W. to Moad Al Bouni, the victim of a December 29, 2019 robbery at 1617 W. 78th Street, and improperly told him that A.W. was the offender who robbed him.

66. A.W. was arrested a second time on January 16, 2020 and brought to the police station where he was questioned by Defendant ALBERT and an UNKNOWN CHICAGO POLICE DETECTIVE.

67. A.W. told Defendant ALBERT and the UNKNOWN CHICAGO POLICE DETECTIVE that he was not involved in the robberies.

68. Plaintiff told the detectives that A.W. was inside of their home at the time of the December 29, 2019 robbery and retrieved confirming information from her Ring Home Video Security system on her phone to show that A.W. did not leave the home on the night of December 29, 2019.

69. Defendants ALBERT and the UNKNOWN CHICAGO POLICE DETECTIVE disregarded the video evidence and took no steps to obtain it from Plaintiff.

70. Defendants ALBERT, DUDLEY, BUCKHALTER, and the UNKNOWN CHICAGO POLICE DETECTIVE also disregarded the fact that the telephone number used for the January 2, 2020 pizza delivery was the same one used for the domestic disturbance call, also on January 2nd at K.C.'s home and that it matched the telephone number used for the December 29, 2019 pizza delivery.

71. Defendants ALBERT, DUDLEY, BUCKHALTER, and the UNKNOWN CHICAGO POLICE DETECTIVE disregarded this information so that they could continue with the false arrest and prosecution of A.W.

72. Defendants ALBERT, DUDLEY, BUCKHALTER, and the UNKNOWN CHICAGO POLICE DETECTIVE sought to have A.W. arrested and prosecuted for the December 29, 2019 and January 2, 2020 robberies along with several other robberies of food delivery drivers.

73. Defendants ALBERT, DUDLEY, BUCKHALTER, and the UNKNOWN CHICAGO POLICE DETECTIVE intentionally hid information about the video that confirmed A.W. was not involved in the December 29, 2019 robbery as well as information about K.C. and the actual offenders who committed the robberies from prosecutors.

74. As a result of the arrest for the December 29, 2019 robbery, A.W. was detained at the Juvenile Temporary Detention Center.

75. Upon learning and receiving video evidence that proved that A.W. was at home at the time of the December 29, 2019 robbery, prosecutors dismissed all charges against A.W. on July 29, 2020, in a manner indicative of innocence.

76. A.W. was incarcerated at the Juvenile Temporary Detention Center for over a month and spent several additional months on electronic monitoring and was deprived of his liberty until all criminal charges initiated against him for the December 29, 2019 and January 2, 2020 robberies were dismissed on July 29, 2020, in a manner indicative of innocence.

## COUNT I
### 42 U.S.C. § 1983 – False Arrest—January 2, 2020
### Against Defendants Smith, Williams, Curiel, Walsh, Doolin, & Dudley

77. Each of the foregoing paragraphs is incorporated as if fully restated herein.

78. As described above, Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, and DUDLEY falsely arrested A.W. without justification and probable cause for the January 2, 2020 incident.

79. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and specifically, the rights of A.W.

80. As a result of the above-described wrongful infringement of Plaintiff's rights, A.W. suffered damages, including but not limited to prolonged physical incarceration and severe mental distress and anguish.

**WHEREFORE,** Plaintiff and A.W. demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT II
### 42 U.S.C. § 1983 – False Arrest—December 29, 2019
### Against Defendants Dudley, Albert, Buckhalter & Unknown Chicago Police Detective

81. Plaintiff realleges and incorporates paragraphs 1-76 as fully stated herein.

82. As described above, Defendants DUDLEY, ALBERT, BUCKHALTER, and the UNKNOWN CHICAGO POLICE DETECTIVE falsely arrested A.W. without justification and probable cause for the December 29, 2019 robbery.

83. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and specifically, the rights of A.W.

9

84. As a result of the above-described wrongful infringement of Plaintiff's rights, A.W. suffered damages, including but not limited to prolonged physical incarceration and severe mental distress and anguish.

**WHEREFORE**, Plaintiff and A.W. demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT III
## 42 U.S.C. § 1983 – Due Process Violation
## Against All Defendants

85. Plaintiff realleges and incorporates paragraphs 1-76 as fully stated herein.

86. As described above, the DEFENDANT OFFICERS and DETECTIVES, while acting under color of law and within the scope of their employment as Chicago Police Officers, violated A.W.'s right to Due Process, *inter alia*, fabricating evidence, by manipulating and/or tampering with witness statements and identification procedures, and withholding exculpatory evidence from prosecutors resulting in a deprivation of A.W.'s liberty. Absent this misconduct, the prosecution of the A.W. could not and would not have been pursued.

87. The misconduct described in this Court was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others, and specifically, the rights of the A.W.

88. As a result of the above-described wrongful infringement of A.W.'s rights,

89. A.W. suffered damages, including but not limited to, incarceration, severe mental distress, and anguish.

**WHEREFORE**, Plaintiff and A.W. demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT IV
### 42 U.S.C. § 1983 – Conspiracy
### Against All Defendants

90. Plaintiff realleges and incorporates paragraphs 1-76 as fully stated herein.

91. Pleading in the alternative as described more fully above, the DEFENDANT OFFICERS and DETECTIVES conspired with each other to frame A.W. as the offender involved in the robberies. The DEFENDANT OFFICERS and DETECTIVES also acted in concert with each other to intentionally deprive A.W. of his constitutional rights under color of law.

92. In furtherance of this conspiracy, the DEFENDANT OFFICERS AND DETECTIVES took overt acts in fabricating evidence, manipulating the false identification of A.W., and withholding exculpatory evidence from prosecutors, all in violation of both state and federal law.

93. The misconduct described in this Count was undertaken intentionally, with malice, willfulness, wantonness, and reckless indifference to the rights of the A.W..

94. As a result of the above-described wrongful infringement of A.W.'s rights, Plaintiff and A.W suffered financial and other damages, including but not limited to incarceration, mental stress, and anguish.

95. The aforementioned actions of the DEFENDANTS were the direct and proximate cause of the violations of the United States Constitution, the Fourth Amendment, and Fourteenth Amendment.

**WHEREFORE,** Plaintiff and A.W. demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT V
### 42 U.S.C. § 1983 – Unlawful Pretrial Detention
### Against All Defendants

96. Plaintiff realleges and incorporates paragraphs 1-76 as fully stated herein

11

97. Detention without probable cause violates the Fourth Amendment (as applied to the States by the Fourteenth Amendment). *Manuel v. Joliet*, 137 S. Ct. 911 (2017)

98. As outlined above, the DEFENDANT OFFICERS AND DETECTIVES detained A.W. without probable cause in violation of A.W.'s Fourth Amendment Rights.

99. A.W. sustained prolonged detention as a result of the DEFENDANT OFFICERS and DETECTIVE'S actions.

100. The misconduct of the DEFENDANT OFFICERS and DETECTIVES proximately caused injury to Plaintiff and A.W., including but not limited to emotional pain and suffering, attorneys' fees, additional expenses.

**WHEREFORE,** Plaintiff and A.W. demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT VI
### Illinois State Law – Malicious Prosecution
### Against All Defendants

101. Plaintiff realleges and incorporates paragraphs 1-76 as fully stated herein.

102. Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, UNKNOWN CHICAGO POLICE DETECTIVE, and the CITY OF CHICAGO, through its employees and agents, caused criminal proceedings to be initiated against A.W..

103. Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, UNKNOWN CHICAGO POLICE DETECTIVE, and the CITY OF CHICAGO, through its employees and agents, arrested A.W. without probable cause, fabricated police reports, and placed false charges upon A.W..

104. Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, UNKNOWN CHICAGO POLICE DETECTIVE, and the CITY OF CHICAGO, through its employees and agents, undertook these actions intentionally and with malice.

105. The actions undertaken by Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, UNKNOWN CHICAGO POLICE DETECTIVE, and the CITY OF CHICAGO, through its employees and agents, were willful and wanton.

106. On or about July 29, 2020, all criminal charges against A.W. were dismissed and the case against Plaintiff was terminated in his favor in a manner indicative of innocence.

107. As a result of Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, UNKNOWN CHICAGO POLICE DETECTIVE, and the CITY OF CHICAGO's actions, through its employees and agents, misconduct, A.W. suffered damages including emotional distress, pain and suffering, and other damages which will be proven at trial.

**WHEREFORE,** Plaintiff and A.W. demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT VII
### 42 U.S.C. § 1983 –Supervisory Liability
### Against Defendant Doolin

108. Plaintiff realleges and incorporates paragraphs 1-76 as fully stated herein.

109. Defendant DOOLIN was the direct and immediate supervisor of Defendant Officers WILLIAMS, SMITH, CURIEL, and WALSH.

13

110. Defendant DOOLIN knew about the unlawful conduct stated throughout this complaint committed by Defendant Officers WILLIAMS, SMITH, CURIEL, and WALSH.

111. Defendant DOOLIN facilitated, approved, and condoned the unlawful conduct committed by Defendant Officers WILLIAMS, SMITH, CURIEL, and WALSH.

112. Defendant DOOLIN did nothing to stop the unlawful conduct committed by Defendant Officers WILLIAMS, SMITH, CURIEL, and WALSH.

113. As a direct and proximate consequence of Defendant DOOLIN'S conduct, A.W. suffered damages, including emotional distress, pain and suffering and monetary expense.

**WHEREFORE,** Plaintiff and A.W. demand judgment against Defendant DOOLIN for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this court deems equitable and just.

### COUNT VIII
### Illinois State Law – Intentional Infliction of Emotional Distress
### Against All Defendants

114. Plaintiff realleges and incorporates paragraphs 1-76 as fully stated herein.

115. As described more fully above, the conduct of Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, UNKNOWN CHICAGO POLICE DETECTIVE, and the CITY OF CHICAGO, through its agents and employees, was extreme and outrageous in numerous ways, as stated more fully in and throughout this Complaint.

116. Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, UNKNOWN CHICAGO POLICE DETECTIVE, and the CITY OF CHICAGO, through its employees and agents, intended to inflict severe emotional distress on A.W.

117. Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, UNKNOWN CHICAGO POLICE DETECTIVE, and the CITY OF

CHICAGO, through its employees and agents, knew that their misconduct had a high probability of inflicting severe emotional distress on A.W.

118. Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, UNKNOWN CHICAGO POLICE DETECTIVE, and the CITY OF CHICAGO, through its employees and agents, misconduct caused A.W. to experience severe emotional distress.

**WHEREFORE,** Plaintiff and A.W. demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT IX
### Indemnification
### Against the City of Chicago

119. Each of the foregoing paragraphs is incorporated as if fully restated herein.

120. At all relevant times, Defendant CITY OF CHICAGO was the employer of Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, and UNKNOWN CHICAGO POLICE DETECTIVE.

121. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the course and scope of their employment activities.

122. Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, and UNKNOWN CHICAGO POLICE DETECTIVE committed the alleged acts under the color of law and in the course and scope of their employment with the CITY OF CHICAGO.

123. As a proximate cause of Defendants SMITH, WILLIAMS, CURIEL, WALSH, DOOLIN, DUDLEY, ALBERT, BUCKHALTER, and UNKNOWN CHICAGO POLICE

DETECTIVE unlawful acts, which occurred within the course and scope of their employment activities, Plaintiff suffered damages.

**WHEREFORE,** should the Individual Defendants be found liable, Plaintiff and A.W. demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

**PLAINTIFF and A.W. DEMAND TRIAL BY JURY.**

**DATED**: December 29, 2020

Respectfully Submitted,

Tiffiny Watson, as Mother and Next Friend of A.W., a Minor, Plaintiff

By: */s/ Julian Johnson*
Plaintiff's Attorney

Julian Johnson
The Law Office of Julian Johnson, LLC
55 East Monroe Street, Suite 3800
Chicago, Illinois 60603
Phone: 312-487-1711
Fax: 312-300-4029
julian@julianjohnsonlaw.com